First case today is People v. Nibbe. That's case number 4140363. For the appellant, we have Warner Brockett and for the applant, Luke McNeil. Mr. Brockett. May it please the court? Counsel? Counsel? My name is Warner Brockett and on behalf of... That mic is not going to magnify your voice so you really don't have to lean into it. Just speak up because it doesn't make you any louder. It's just for recording. Right. Well, on behalf of the Office of the State Appellate Defender, I'm pleased to represent Mr. Ryan Nibbe. Mr. Nibbe makes two arguments on this appeal. However, I'll only be addressing the first argument, but if your honors have any questions regarding argument two, I'll be more than happy to answer them. Your honors, we're here today because under the facts of this case, the state's decision to charge Mr. Nibbe with second-degree murder essentially ran afoul of a long-standing principle in Illinois, which is that death or great bodily harm is not a natural or probable consequence of a single barefisted blow. Your honors, the facts of this case were that on the early morning hours of July 28, 2013, a man by the name of Timothy Robertson broke into an apartment where Mr. Nibbe and his girlfriend were visiting with a few of their friends. Now, up until that point, Mr. Robertson was a complete stranger to everyone in the apartment. He had no prior acquaintances with anyone, so naturally his abrupt intrusion frightened everyone and caused a bit of a frenzy. Well, Mr. Nibbe confronted Mr. Robertson. Essentially, he asked Mr. Robertson, hey, what are you doing here, that this is not your place, and you need to leave. Well, Mr. Robertson, who apparently was heavily under the influence, attacked Mr. Nibbe. At that point, Mr. Nibbe, in self-defense, hit Mr. Robertson back, and at that point he was able to get Mr. Robertson to leave the apartment. Well, Mr. Nibbe was still kind of worked up. He had been drinking himself. He was in a bit of an excited, emotional state. So he followed Mr. Robertson onto the sidewalk, and he yelled a few comments to him. He said, hey, this is not your place. You have no business being here, and you need to leave. Don't come back. Well, at that point, Mr. Robertson turned around and came back towards Mr. Nibbe. A brief altercation ensued. Mr. Nibbe ultimately hit Mr. Robertson on the left side of his face, and Mr. Robertson stumbled to the ground, and he hit his head on the sidewalk, which rendered him unconscious. Mr. Robertson needed to be hospitalized, and he spent approximately six days in the hospital, and he ultimately died, unfortunately, from blunt force trauma to the skull. Now, based on those facts, the state charged Mr. Nibbe with second-degree murder under a theory that Mr. Nibbe had knowledge that this single bare-fisted blow created a strong probability of death or great bodily harm. Counsel, let me ask you, was it determined whether or not the punch or the intervening factor of the gentleman falling on the pavement and hitting his head actually caused his death? Well, the medical testimony established that it was the collision, bodily collision, with the concrete that caused the blunt force trauma, which ultimately led to his death. Now, under Illinois law, a person has knowledge when he or she is consciously aware that their conduct is practically certain to cause a particular result. In this case, the state alleged that Mr. Nibbe was consciously aware that a single bare-fisted blow was practically certain to cause Mr. Robertson's death. Did the charge say practically certain? Well, the charge only said knowledge that this conduct created a strong probability of death or great bodily harm. But the way knowledge is defined is that you have to be consciously aware that your conduct is practically certain to bring about a particular result. And so, in this case, the state alleged that Mr. Nibbe was consciously aware that… Counsel, I thought the practical certain applied to an intentional mental state instead of a known mental state. Well, the way I read the statute is that it applied to knowledge as opposed to intent. So, that was the state's theory of the case, that Mr. Nibbe was consciously aware that this conduct would cause Mr. Robertson's death. Now, whether or not a person is consciously aware of conduct that's going to cause a particular result, it ultimately depends on the reasonable and probable consequence of that act. In other words, it's presumed that a person intends the natural and probable consequence of his conduct. Well, this brings me back to the long-standing principle of Illinois, which is that a single bare-fisted blow, a person doesn't intend the natural… Death or great bodily harm is not a natural and probable consequence of a single bare-fisted blow, which is that a person can't foresee death, basically, by using his or her bare fist. Now, there's a long line of cases in Illinois which basically makes this clear. It reaffirms this principle, starting way back with… The opposing counsel cites in their brief some exceptions to this general proposition that you're discussing. Do any of them apply to the situation here? Not on these facts. Definitely not on these facts. We have a situation here where we have two individuals who are equal in strength, equal in body stature, and similar in age, although there was a 10-year age difference, but it wasn't that significant in comparison to the similarities they share, their strength and their body stature. So, under these facts, the exceptions don't apply. The situation here is a classic example to which this long-standing principle was established, for which this long-standing principle was established. We just have two individuals who got into a brief scuffle, and unfortunately, someone died. But the murder statute shouldn't be contrued to reach a situation such as this. And there's a long line of cases, starting with People v. Crenshaw, that reaffirms this principle. The most recent case was People v. Langehill, came out of the 1st District, decided last year. We had a situation very similar to this one, where we had a 21-year-old defendant who got into an altercation with his 55-year-old father. The 21-year-old… the altercation turned quite violent when the father grabbed his son, and his son, in an effort to disentangle himself, hit his father three or four or five times in the head. The father had to be hospitalized as a result of the blows, and a couple of days later, he died. In that case, the state charged and they convicted the defendant of second-degree murder. But on appeal, the appellate court, this court, well, not this court, but the 1st District, determined that those three or four punches were not… with those three or four punches, the defendant was not… did not create a strong probability of death with great bodily harm, because typically, in a situation such as that one, where we have two defendants, although there was a very big difference in age, but the victim and the defendant in that case were very similar in strength and body size, and we had a brief altercation that lasted less than a minute. Well, counsel, in that case, the appellate court reduced the defendant's second-degree murder conviction to involuntary manslaughter. Is that what you're asking us to do? Well, in this situation, it's unnecessary to do so, because Mr. Nibby was also convicted of aggravated battery predicated on public way, and essentially, aggravated battery and involuntary manslaughter are the same class offense, and they carry the same class… the same penalties. They're both threes carrying four to 15, or just… Two to five and five to ten. In this case, Mr. Nibby will be eligible for the extended term because of his prior… Correct. So he would be eligible for ten years if we were to accept your argument that the second-degree murder conviction cannot stand. Yes. Okay. And so, Your Honors, I know vacating the verdict or vacating the conviction is an extraordinary remedy, but essentially, under the facts of this case, it's warranted, because to do otherwise would just be an affront to this long-standing principle, which was held so dearly by this Court and others, which is that death of great bodily harm is just not a natural and probable consequence of a single bare fisted blow. With that, Mr. Nibby respectfully asks this Court to reverse his second-degree murder conviction and remand for resentencing for aggravated battery predicated on public way. Thank you. Thank you, Counsel. Mr. McNeil? Yes. Please support, Counsel. The first thing we have to look at is the standard of review. Obviously, it's strong in this case. It's looking at the evidence in the light most favorable to the prosecution, allowing all reasonable inferences in favor of the prosecution, and determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Here, there's only one element in dispute, and that's whether when Defendant punched Mr. Robertson, whether he knew that such acts created a strong probability of great bodily harm. That's what we're looking at here. The jury inferred that he did know that his punch would cause great bodily harm. That was not an unreasonable inference for the jury to make. As for the longstanding principle in Crenshaw, I'm sure this Court's aware, as is the State, this case is almost 100 years old. It's been cited only a handful of times throughout the 100 years. Is it still good law? I mean, the cases that do cite it don't overturn it, but they almost exclusively distinguish it. In almost every case that cites Crenshaw, the Appellate Court or the Supreme Court comes up with a reason that the Defendant's guilty charge should be upheld. But you don't have a case for us that overrules it. I wish in every sufficiency of evidence case I had a case that was exactly on point, but I do not. And do the facts of this case fit the actual circumstances of any of the other cases that have distinguished the Crenshaw case? Not a murder case, but the Farrell case, which I cited, the First District case, it was an aggravated, it didn't result in a death. However, the Appellate Court, just like in this case we dealt with a one punch to the face, the Appellate Court determined that the Defendant should have known, or did know, let me get the exact language. But is that really a fair comparison since the whole basis of Crenshaw is we can't convict someone of murder based on a single bare-fisted punch? Well, I think that the statute that he's charged under is much more important here than the elements of the statute of murder is much more important than the 1921 case, People v. Crenshaw. The element that the jury had to prove here, to find the Defendant guilty, was only that he knew that his punch would create a strong probability of great bodily harm to the victim. That's the element in its lowest form, the lowest hurdle that the jury had to reasonably infer. I know it didn't happen here, but I'm just wondering, would Defendant have been entitled to some type of instruction had it been presented regarding the law on the bare-fisted punch? I mean, I don't know if there's a pattern of instruction. Oh, there's not, but I'm just wondering out loud. I'm sure that that instruction would have been accepted had it been given. But there wasn't an instruction? I'm not even sure. Like I said, this all boils back down to this 1921 case, People v. Crenshaw. I guess what I'm getting at is when the jury made the finding that it made, it was unaware of this law that says that a single bare-fisted punch is not sufficient to convict someone of murder. But they were aware of the much more important element that they had to prove here, that being knowledge of great bodily harm, or a strong probability of great bodily harm. What about the fact that where this occurred, I mean, obviously everyone was aware that you had the street there, and I think the jury could reasonably think that, well, if you punch someone on the street, you know it's likely that they're going to fall on the street and hit themselves in the head or whatever, that that would satisfy what was necessary. But again, I get back to that they were unaware of this long-standing rule. Again, I'm not even sure that an instruction of this so-called long-standing rule. You disagree that it's a long-standing rule, a case law? It's still good law on the record. On West law, it's not a red flag. However, like I said, almost any case that does cite it distinguishes it. The much more important factors here are the totality of the circumstances, the evidence that this jury heard, and applying that to the elements of second-degree murder, which the jury did. As for your inference of, of course he's going to know if he falls, he's going to fall on the hard concrete, that's exactly what distinguishes this case from People v. Lignell. In that case, which defendants cited, in that case, the victim died a few days later of a stroke. The appellate court held that this wasn't sufficient evidence to convict the defendant for murder because of the unusual circumstances of death. Here, the victim died of a blunt force trauma to the head from a direct fall resulting from a punch. Of course, a punch of this magnitude, this guy was 6'1", 220 pounds. The guy's going to fall down, and he's going to fall down where he is, which was the hard concrete of the sidewalk. Mr. McNeil, getting back to Crenshaw, you reminded us that it is an old case, 1921, but the Supreme Court revisited in People v. Ward in 1984, I believe. And so certainly there is recognition here of a more recent nature by the Supreme Court of the vitality of what rule of law determined in People v. Crenshaw. If the Ward court distinguished the facts in its case from Crenshaw finding that there was a disparity in size of the two individuals and therefore distinguished Crenshaw on that basis. But would you agree that's a more recent recognition by the Supreme Court of the vitality of the rule announced in Crenshaw? As is Brackett and a few other cases. And they do, like you said, distinguish based on the disparity in size or disparity in age or something like that. So if that's what we need to have as the foundation of our analysis, what is it that distinguishes this case, the facts in this case, from the holding in Crenshaw? Just the totality of the circumstances. We have here a bigger defendant, not much bigger, he had 32 pounds on him, he was a big guy, 6'1", 220. He had 3 inches on the victim, he was 10 years younger than the victim. All these aren't that big of disparities, however they should factor into the totality of the circumstances. The main reason, the main thing was the severity of the punch and the location of the punch. Directly on his face, at least partially on his eye, the jury saw the pictures in the record of the victim in the hospital. The jury heard the medical testimony. He had multiple fractures in his face. His cheekbone was broken, his nasal bone was broken, the upper part of his jaw was broken. There was a witness that testified that the guy was unconscious before even hitting the ground. Of course, this guy is not a doctor, so whether that's true or not isn't really the point. The point is, that goes to the severity of the punch. Basically, this was a defendant, a 6'1", 220 pound guy, using every ounce of force that he could, punching a guy square in the face, unprovoked. But the punch in Crenshaw actually broke the victim's neck, didn't it? Well, I don't know, I can't remember, I think it was like not even to his face in Crenshaw, or the fall broke his neck to the side of the head, something like that. You said unprovoked, but isn't it true that the deceased actually started approaching the defendant after he said those things to him about, you don't belong here, please have been called? He was walking in the direction of the defendant. The witness that testified that it was, he testified clearly that it was unprovoked, his hands were at his side. He wasn't running towards the defendant, he wasn't trying to get back into the apartment. This is the same person who basically ignored his comments in the stairwell moments prior to this encounter and then eventually attacked him, right? Yes, it's unclear on the record whether the victim pushed or punched him in the stairwell, but the record suggested it wasn't that, it wasn't a full-blown assault by the victim here. And at any point that had dissipated. This was in a new location, it was no longer even in a public stairwell, it was on a public street. And there was some distance between the defendant and the victim. In fact, the defendant is the one who prolonged the encounter. He followed him back out and started yelling at him again. So it's a reasonable inference for the jury to make that this was unprovoked by the victim here, especially when a witness said that very thing. The witness was Battis Hill, who gave prior inconsistent statements. However, these inconsistent statements were foreseeable. He was scared of the defendant. He gave the prior statements in the presence of the defendant or directly after the incident. In fact, the defendant even said to the police that he was going to kick this guy's butt for ratting him out. So he had every reason to lie and the jury had every reason to believe his trial testimony over his prior inconsistent statements. The jury was aware of the prior inconsistent statements as well. And they're obviously in the best position to evaluate the credibility of that witness. The main thing is that, as this court stated in Summers, evidence that the defendant committed a voluntary and willful act which has a natural tendency to cause great bodily harm is sufficient to prove the intent required for the offense of murder. Here, the jury's inference that this act, this willful act by the defendant of punching the victim in the face with every amount of strength that he had, had the natural tendency to cause great bodily harm. This was not so unreasonable that any rational trial could find the defendant guilty. So the sufficiency of the evidence standard, especially when we're looking at this in the evidence in the light most favorable to the prosecution as required here. Is a strong probability the same thing as a practical certainty? Or is it something less than that? I go by a strong probability because that's what the statute said. That's how the jury was instructed. I think practical certainty is when you're distinguishing intent versus knowledge as far as the state of mind goes. So a strong probability is something less than a practical certainty, correct? In plain language, of course. And again, the element that the jury had to prove here, or had the evidence prove, was that these acts created a strong probability of great bodily harm. That's the low hurdle that they had to get over. And their inference that this evidence did prove that was not unreasonable. If there are no more questions, I thank the court. I see none. Thank you, counsel. Any rebuttal? Well, Your Honors, I submit to you that Crenshaw is the case that's very on point in this situation. We have a situation that's extremely similar where we have two equally sized individuals and the only cause of death was essentially a single therapist's punch. Crenshaw has never been overturned. It's been distinguished, but those distinguished in fact are not present in the case. Essentially, what counsel refers to in the statute about strong probability of great bodily harm, we need to read that in light of the fact that there is this longstanding principle that death or great bodily harm is just not a natural probable consequence of a bare-fisted blow. I believe that this principle was established in order to limit the breadth of this language in the murder statute. And essentially, we also must remember that Mr. Nibby was acquitted of great bodily harm, aggravated battery predicated on great bodily harm. The jury found him guilty of second-degree murder and aggravated battery predicated on public way. So counsel's use of feral in this case is a bit misplaced, considering that feral dealt with aggravated battery. And we're not dealing with an aggravated battery here. We're dealing with a death. We're dealing with a murder. So the analysis in feral is at best a little bit off-beat, off-put, because in this case we need to look at it's something more than just knowledge that your conduct is going to create a strong probability of great bodily harm. We need to keep it in the backtrack of this idea that murder is very serious, and it essentially requires that your conduct is going to create a strong probability of death, essentially. And I also submit to you that strong probability and practical certainty are the same under the statute. The way knowledge is defined in the statute as being consciously aware of conduct that's going to create a strong probability of that's practically certain to create a particular result. That's the way the statute defines knowledge. And the murder statute uses knowledge. Well, if we just read them in conjunction with each other, essentially what the murder statute is saying is that you have to be practically certain that your conduct is going to create, is practically certain to create a particular result. Also, the testimony from Battlesheld is just replete with inconsistencies and contradictions. But that's a matter for the jury to decide, and we're not disputing that at this moment. But we still need to realize that it's unclear as to whether or not Nibby was not provoked by Mr. Robson. Whatever the case may be, in this case, there's still just one punch. It was not a repeated beating. It was just one punch, and unfortunately, Mr. Robson died as a result. If there's any other questions, thank you. Thanks to both of you. The case is submitted, and the Court stands in recess.